1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ROBERT SAUCEDO,                  ) Case No. CV 13-0799-JPR
                                 )
                  Plaintiff,     )
                                 )
            vs.                  ) **MEMORANDUM OPINION AND ORDER**
                                 ) **REVERSING COMMISSIONER AND**
                                 ) **REMANDING FOR FURTHER**
CAROLYN W. COLVIN, Acting        ) **PROCEEDINGS**
Commissioner of Social           )
Security,                        )
                                 )
                  Defendant.     )
                                 )

I.    PROCEEDINGS

     Plaintiff seeks review of the Commissioner's final decision
denying his applications for disability insurance benefits
("DIB") and supplemental security income ("SSI").  The parties
consented to the jurisdiction of the undersigned U.S. Magistrate
Judge under 28 U.S.C. § 636(c).  This matter is before the Court
on the parties' Joint Stipulation, filed May 23, 2014, which the
Court has taken under submission without oral argument.  For the
reasons stated below, the Commissioner's decision is reversed and
this matter is remanded for further proceedings.

## II.   BACKGROUND

Plaintiff was born on January 1, 1961.  (AR 40, 44, 99, 110, 823.)  He completed 11th grade.  (AR 126.)  He previously worked as a maintenance worker, carpet cleaner, and auto-body painter. (AR 122, 162-66.)

Plaintiff filed applications for DIB and SSI on August 27, 2009.[1]  (AR 99-102.)  He alleged that he had been unable to work since November 17, 2004, because of a lower-back injury that affected him from his "neck down to leg."  (AR 121, 418.)  After his applications were denied, he requested a hearing before an Administrative Law Judge.  (AR 61.)

A hearing was held on June 30, 2011.  (AR 821-49.) Plaintiff, who was represented by counsel, testified, as did a medical expert and a vocational expert.  (Id.)  In a written decision issued August 19, 2011, the ALJ determined that Plaintiff was not disabled.[2]  (AR 19-31.)  On March 29, 2013, the Appeals Council denied his request for review.  (AR 7-10.)  This action followed.

## III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The ALJ's findings and decision should be upheld if they are free of legal error and

---

[1]   Plaintiff also filed applications for DIB and SSI in December 2006, and they were denied initially and upon reconsideration.  (AR 77-81.)  He apparently did not seek further review.

[2]   Although the decision is undated and unsigned, it was provided to Plaintiff as an attachment to a letter from the ALJ dated August 19, 2011.  (AR 16.)

1  supported by substantial evidence based on the record as a whole.
2  Id.; Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v.
3  Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  Substantial evidence
4  means such evidence as a reasonable person might accept as
5  adequate to support a conclusion.  Richardson, 402 U.S. at 401;
6  Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).  It
7  is more than a scintilla but less than a preponderance.
8  Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec.
9  Admin., 466 F.3d 880, 882 (9th Cir. 2006)).  To determine whether
10  substantial evidence supports a finding, the reviewing court
11  "must review the administrative record as a whole, weighing both
12  the evidence that supports and the evidence that detracts from
13  the Commissioner's conclusion."  Reddick v. Chater, 157 F.3d 715,
14  720 (9th Cir. 1996).  "If the evidence can reasonably support
15  either affirming or reversing," the reviewing court "may not
16  substitute its judgment" for that of the Commissioner.  Id. at
17  720-21.

18  **IV.  THE EVALUATION OF DISABILITY**

19      People are "disabled" for purposes of receiving Social
20  Security benefits if they are unable to engage in any substantial
21  gainful activity owing to a physical or mental impairment that is
22  expected to result in death or which has lasted, or is expected
23  to last, for a continuous period of at least 12 months.  42
24  U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257
25  (9th Cir. 1992).

26      A.   The Five-Step Evaluation Process
27      The ALJ follows a five-step sequential evaluation process in
28  assessing whether a claimant is disabled.  20 C.F.R.

3

1  §§ 404.1520(a)(4), 416.920(a)(4); <u>Lester v. Chater</u>, 81 F.3d 821,
2  828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996).  In the first
3  step, the Commissioner must determine whether the claimant is
4  currently engaged in substantial gainful activity; if so, the
5  claimant is not disabled and the claim must be denied.
6  §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the claimant is not
7  engaged in substantial gainful activity, the second step requires
8  the Commissioner to determine whether the claimant has a "severe"
9  impairment or combination of impairments significantly limiting
10  his ability to do basic work activities; if not, a finding of not
11  disabled is made and the claim must be denied.
12  §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant has a
13  "severe" impairment or combination of impairments, the third step
14  requires the Commissioner to determine whether the impairment or
15  combination of impairments meets or equals an impairment in the
16  Listing of Impairments ("Listing") set forth at 20 C.F.R., Part
17  404, Subpart P, Appendix 1; if so, disability is conclusively
18  presumed and benefits are awarded.  §§ 404.1520(a)(4)(iii),
19  416.920(a)(4)(iii).

20      If the claimant's impairment or combination of impairments
21  does not meet or equal an impairment in the Listing, the fourth
22  step requires the Commissioner to determine whether the claimant
23  has sufficient residual functional capacity ("RFC")[3] to perform
24  his past work; if so, the claimant is not disabled and the claim
25  must be denied.  §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  The

26

27      [3]   RFC is what a claimant can do despite existing exertional
28  and nonexertional limitations.  §§ 404.1545, 416.945; <u>see Cooper v.
Sullivan</u>, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

4

1  claimant has the burden of proving he is unable to perform past
2  relevant work.  <u>Drouin</u>, 966 F.2d at 1257.  If the claimant meets
3  that burden, a prima facie case of disability is established.
4  <u>Id.</u>  If that happens or if the claimant has no past relevant
5  work, the Commissioner then bears the burden of establishing that
6  the claimant is not disabled because he can perform other
7  substantial gainful work available in the national economy.
8  §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  That determination
9  comprises the fifth and final step in the sequential analysis.
10  §§ 404.1520, 416.920; <u>Lester</u>, 81 F.3d at 828 n.5; <u>Drouin</u>, 966
11  F.2d at 1257.

12      B.    <u>The ALJ's Application of the Five-Step Process</u>

13      At step one, the ALJ found that Plaintiff had not engaged in
14  any substantial gainful activity since November 17, 2004.  (AR
15  21.)  At step two, he concluded that Plaintiff had severe
16  impairments of "hypertension and degenerative disk disease of the
17  lumbar spine."  (<u>Id.</u>)  At step three, the ALJ determined that
18  Plaintiff's impairments did not meet or equal a Listing.  (<u>Id.</u>)
19  At step four, he determined that Plaintiff had the RFC to perform
20  "light work" with only occasional climbing, stooping, kneeling,
21  and crouching (AR 22-23) and was unable to perform his past
22  relevant work (AR 29-30).  Based on the VE's testimony, however,
23  the ALJ determined that Plaintiff could perform jobs existing in
24  significant numbers in the national and regional economies.  (AR
25  30-31.)  Thus, he found that Plaintiff was not disabled.  (AR
26  31.)

27

28

1  **V.    DISCUSSION**

2         Plaintiff argues that the ALJ erred in (1) failing to

3  explicitly address the opinion of state-agency physician M. Yee,

4  (2) assessing the opinions and findings of Plaintiff's treating

5  and examining physicians, and (3) discounting Plaintiff's

6  credibility.  (J. Stip. at 3.)

7         A.    <u>The ALJ Failed to Properly Consider the Medical Evidence</u>

8         Plaintiff contends that the ALJ erred in assessing the

9  opinions and findings of his treating and examining physicians

10  and in failing to address Dr. Yee's 2007 and 2009 opinions.  (<u>Id.</u>

11  at 4-5, 14-16, 17.)

12              1.    <u>Background</u>

13         On November 17, 2004, Plaintiff was injured at work when an

14  approximately 30-pound pole that he was carrying struck a

15  sprinkler in the ceiling, fell from his hands, bounced off the

16  floor, and struck Plaintiff in the head, lacerating his face and

17  knocking him to the floor, where he fell partially across a

18  pallet, possibly knocking him unconscious.  (<u>See</u> AR 213-14, 258.)

19  Plaintiff received treatment for his head injuries and was

20  discharged (<u>see</u> AR 256-60) but soon thereafter began suffering

21  low-back pain and numbness in his right leg (<u>see</u> AR 214, 251,

22  432) and missing work (<u>see</u> AR 218-19).

23         Plaintiff saw several doctors in an attempt to determine and

24  treat the source of his pain, including primary-care physician

25  Douglas Beseth (<u>e.g.</u>, AR 226-29, 232, 235, 249, 261-65),

26  orthopedic surgeon Gregory Heinen (AR 212-25), orthopedic surgeon

27  David Wood (<u>e.g.</u>, AR 197-207, 272-73, 437-52), neurologist

28  Jeffrey Ries (<u>e.g.</u>, AR 237-39, 241-43, 250-55, 348), pain-

management specialist Peter White (e.g., AR 230-31, 233-34, 270-71, 337-39), orthopedic surgeon Darren Bergey (e.g., AR 431-35, 534-39), neurologist Scott Haldeman (AR 317-27), pain-management specialist Vance Johnson (AR 454-58), orthopedic surgeon Thomas Jackson (AR 492-500), rehabilitation specialist Larry Ming (AR 512-16), and internist Nick Mashouer (AR 502-08). (See generally AR 218-20, 320-23.)

A January 1, 2005 MRI was consistent with an annular tear or fissure of the disc between Plaintiff's L5 and S1 vertebrae. (AR 247.)  Plaintiff's lumbar range of motion was limited.  (See, e.g., AR 324, 332, 333, 438.)  Attempts to treat Plaintiff's back pain and leg numbness with prescription medication, physical therapy, and injections proved inadequate.  (See AR 211, 460; see also AR 201, 237, 240, 270, 319.)  He was advised to remain off work.  (See, e.g., AR 204, 206, 208, 218-19, 239, 355-56, 451; see also AR 348 (only light work).)  A January 30, 2007 discogram identified the disc between Plaintiff's L5 and S1 vertebrae as the source of his pain.  (AR 410-11.)

On March 20, 2007, Dr. Yee, an internist and state-agency consultant, completed a case analysis and RFC assessment of Plaintiff, finding him capable of "sedentary" work.  (AR 420; see AR 413-20.)  Dr. Yee opined that Plaintiff could lift up to 10 pounds; could stand or walk and sit for six hours each in an eight-hour day; could never balance but could occasionally climb, stoop, kneel, crouch, or crawl; and should avoid concentrated exposure to hazards and even moderate exposure to vibration.  (AR 414-16.)

On November 1, 2007, Plaintiff underwent an anterior lumbar

7

interbody fusion and posterior spinal fusion of his L5 and S1 vertebrae.  (AR 519, 525.)  On November 4, 2007, he underwent a left L5-S1 laminectomy, medial facetectomy, and removal of nonsegmental instrumentation.  (AR 517, 525.)  Plaintiff progressed well with therapy and was discharged from the hospital on November 6, 2007.  (AR 525.)

Although he complained of "bad leg pain" at his November 17, 2007 follow-up appointment, by January 4, 2008, Plaintiff's leg pain was "essentially resolved" and his back pain was "minimal." (AR 541, 545.)  Treatment notes from Plaintiff's spine surgeon, Dr. Bergey, reflect that although Plaintiff initially reported good results from his surgeries (see AR 547-51, 554-62), he began to experience right-thigh numbness (see AR 550, 558, 561), and upon returning to work, he complained of increasing low-back pain radiating into his right leg (see AR 563, 569, 572).  Although Plaintiff briefly returned to work (see AR 561, 831), he missed work because of pain (see AR 561, 563) and stopped working on October 26, 2008 (see AR 594).  An October 31, 2008 MRI revealed that the disc between his L3 and L4 vertebrae had collapsed, a possible annular tear, and moderate stenosis consistent with his radiculopathy.  (AR 530-31, 567.)  On December 16, 2008, Dr. Bergey deemed Plaintiff temporarily totally disabled.  (AR 573.)

In addition to continuing treatment with Dr. Bergey, Plaintiff again was seen by other specialists, including Dr. Heinen (AR 655-82), Dr. Jackson (AR 606-14), and pain specialist James Rho (AR 710-18, 779-97).  Plaintiff attempted to manage the new L3-L4 impairment with pain medication, including through treatment by Dr. Rho.  (See, e.g., AR 584, 710-18.)  But

8

Plaintiff continued to suffer pain and reduced range of motion.
(See, e.g., AR 569-70, 572-73, 585, 588-89, 597, 608, 610, 699.)
His doctors noted positive straight-leg-raise test on several
occasions.  (See, e.g., AR 610, 658, 673, 700, 721.)  A June 29,
2010 CT scan showed mild disc bulges and mild stenosis at L3-L4
and L4-L5.  (AR 603-04.)

On October 25, 2009, Dr. Yee again completed a case analysis
and RFC assessment on behalf of the agency and found Plaintiff
capable of "at least sed[entary]" work.  (AR 491; see AR 484-91.)
Specifically, Dr. Yee found that Plaintiff could lift 10 pounds;
could stand or walk for two hours each in an eight-hour day;
could sit for six hours in an eight-hour day; could never balance
but could occasionally climb, stoop, kneel, crouch, or crawl; and
should avoid concentrated exposure to hazards or vibration.  (AR
485-87.)

On July 12, 2010, Plaintiff was examined by orthopedic
surgeon Payam Moazzaz on behalf of the agency.  (AR 593-97.)  Dr.
Moazzaz noted reduced range of motion in Plaintiff's lumbar spine
but found him neurologically intact.  (AR 597.)  Dr. Moazzaz
opined that Plaintiff was capable of light work but only
occasional climbing, stooping, kneeling, and crouching.  (Id.)

On May 9, 2011, Dr. Bergey performed a right L3-L4
laminotomy, foraminotomy, and fusion.  (AR 769.)  Following the
procedure, Plaintiff continued pain management with Dr. Rho.
(See AR 772-78, 837-38.)  At the June 30, 2011 hearing, Plaintiff
testified that his recent surgery appeared to have addressed the
numbness in his right leg and that he would begin physical
therapy the following day.  (AR 837.)  Plaintiff's doctors had

advised him to lift nothing heavier than a milk jug in the period immediately following the surgery; prior to the surgery, his doctors recommended that he lift no more than 30 pounds. (AR 838-39.)

Medical expert Steven Gerber testified that "based on my review of the entire file," Plaintiff was capable of "functional ability at the light level with occasional at all postural."[4] (AR 826.)  Dr. Gerber did not point to any specific bases in the medical evidence for his finding.  (See AR 825-30.)

### 2.  Applicable law

Three types of physicians may offer opinions in Social Security cases: (1) those who directly treated the plaintiff, (2) those who examined but did not treat the plaintiff, and (3) those who did not treat or examine the plaintiff.  Lester, 81 F.3d at 830.  A treating physician's opinion is generally entitled to more weight than that of an examining physician, and an examining physician's opinion is generally entitled to more weight than that of a nonexamining physician.  Id.

This is true because treating physicians are employed to cure and have a greater opportunity to know and observe the claimant.  Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).  If a treating physician's opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, it should be given controlling weight.

---

[4]    Postural activities include climbing, balancing, stooping, kneeling, crouching, and crawling.  See §§ 404.1569a(c)(vi), 416.969a(c)(vi); (AR 485-86).

1  §§ 404.1527(c)(2), 416.927(c)(2).  If a treating physician's
2  opinion is not given controlling weight, its weight is determined
3  by length of the treatment relationship, frequency of
4  examination, nature and extent of the treatment relationship,
5  amount of evidence supporting the opinion, consistency with the
6  record as a whole, the doctor's area of specialization, and other
7  factors.  §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

8       When a treating or examining doctor's opinion is not
9  contradicted by some evidence in the record, it may be rejected
10 only for "clear and convincing" reasons.  See Carmickle v.
11 Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008)
12 (quoting Lester, 81 F.3d at 830-31).  When a treating or
13 examining physician's opinion is contradicted, the ALJ must
14 provide only "specific and legitimate reasons" for discounting
15 it.  Id.  The weight given an examining physician's opinion,
16 moreover, depends on whether it is consistent with the record and
17 accompanied by adequate explanation, among other things.
18 §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6).

19            3.  Analysis

20      The ALJ formulated the RFC on the basis of "the opinions of
21 Dr. Gerber . . . [and] Dr. Moazzaz, which [he] considered highly
22 probative."  (AR 28.)  Yet nowhere in the decision did the ALJ
23 explicitly weigh the opinions of the several other doctors who
24 treated and examined Plaintiff's back and leg impairments in the
25 seven years between the original injury and the decision.  Nor
26 did he address the findings of the state-agency physicians.
27 Rather, as Plaintiff notes, the ALJ merely summarized in batches
28 Plaintiff's medical evidence, including some findings,

11

1  recommendations, and opinions of treating and examining
2  physicians, then indicated that "[t]here [we]re no complications
3  noted" or he "found no significant abnormalities, functional
4  limitations, and diagnoses, as either the conditions mentioned
5  were stable and/or well control[led]." (J. Stip. at 15; <u>see,</u>
6  <u>e.g.</u>, AR 23.)

7       An ALJ is required to "evaluate every medical opinion" in
8  the record, "[r]egardless of its source," and provide an
9  explanation supported by substantial evidence in the record for
10 the weight given to each opinion. §§ 404.1527(c) & (e),
11 416.927(c) & (e); <u>see also</u> SSR 96-2p, 1996 WL 374188, at *2-3
12 (July 2, 1996); SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996).
13 Because the ALJ did not give controlling weight to the opinions
14 of Plaintiff's treating physicians, he was required to provide
15 specific and legitimate reasons for discounting them. <u>Carmickle</u>,
16 533 F.3d at 1164; <u>Rollins v. Massanari</u>, 261 F.3d 853, 856 (9th
17 Cir. 2001). But the ALJ omitted mention of the treating
18 physicians' opinions almost entirely, making it unclear whether
19 and to what extent he considered them. (<u>See, e.g.</u>, AR 22 (naming
20 doctors but not attributing findings or opinions to them); AR 24
21 (noting Dr. Bergey's findings but not indicating ALJ's assessment
22 of them).) That was error. <u>See</u> <u>Lingenfelter</u>, 504 F.3d at 1038
23 n.10 (finding error when ALJ "only briefly mentioned" one
24 treating physician and "did not acknowledge" another "at all");
25 <u>Embrey v. Bowen</u>, 849 F.2d 418, 422 n.3 (9th Cir. 1988) ("The ALJ
26 must either accept the opinions of [claimant's] treating
27 physicians or give specific and legitimate reasons for rejecting
28 them.").

1    Nor did the ALJ meet his burden to provide specific and
2  legitimate reasons "by setting out a detailed and thorough
3  summary of the facts and conflicting clinical evidence, stating
4  his interpretation thereof, and making findings." <u>Morgan v.</u>
5  <u>Comm'r of Soc. Sec. Admin.</u>, 169 F.3d 595, 600-01 (9th Cir. 1999)
6  (internal quotation marks omitted).  His repeated statements that
7  he "found no significant abnormalities, functional limitations,
8  and diagnoses" in a given batch of records did not provide
9  insight into his reasons for dismissing most of the substantial
10 evidence of Plaintiff's impairments.  See <u>Embrey</u>, 849 F.2d at 421
11 (noting level of specificity required of explanation for
12 discounting treating doctor's medical opinion).  Even if the ALJ
13 found that the treating physicians' opinions were not entitled to
14 controlling weight because they were contradicted by substantial
15 evidence in the record, those opinions were "still entitled to
16 deference" and should have been weighed according to the factors
17 in §§ 404.1527 and 416.927.  <u>Lingenfelter</u>, 504 F.3d at 1038 n.10;
18 <u>Orn v. Astrue</u>, 495 F.3d 625, 633 (9th Cir. 2007) (internal
19 quotation marks omitted).

20    The ALJ was also required to provide specific and legitimate
21 reasons for apparently discounting the opinions of examining
22 doctors.  <u>Carmickle</u>, 533 F.3d at 1164; <u>Lester</u>, 81 F.3d at 830-31.
23 As with the treating physicians, the ALJ largely ignored the
24 opinions expressed by Plaintiff's examining doctors other than
25 Dr. Moazzaz.  (<u>See, e.g.</u>, AR 22 (mentioning Dr. Heinen but not
26 weighing his findings or opinion); AR 24-25 (noting Dr. Jackson's
27 findings but not his opinion or the weight given to it).)  The
28 ALJ thus provided no indication why he chose to rely solely on

Dr. Moazzaz among Plaintiff's examining doctors, despite the fact that some of the others, such as Drs. Heinen and Jackson, saw Plaintiff more than once, prepared extensive findings, and thus were more familiar with his medical history.  See §§ 404.1527(c)(6), 416.927(c)(6) ("the extent to which an acceptable medical source is familiar with the other information in your case record" is "relevant factor[]" in assessing medical opinion); cf. §§ 404.1527(c)(2)(i) & (ii), 416.927(c)(2)(i) & (ii) (noting importance of length and nature of treatment relationship in weighing doctor's opinion); Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1299 (9th Cir. 1999) ("Nothing in [one examining doctor's report] rules out [another examining doctor's] more extensive findings.").

The ALJ's failure to explicitly address Dr. Yee's opinion was also error.  An ALJ is required to consider as opinion evidence the findings of state-agency medical consultants and to explain in his decision the weight given to such opinions. §§ 404.1527(e)(2)(i)-(ii), 416.927(e)(2)(i)-(ii); see also SSR 96-6p, 1996 WL 374180, at *2 (stating that ALJ "may not ignore" opinions of state-agency medical consultants "and must explain the weight given to the opinions in their decisions"); cf. Sawyer v. Astrue, 303 F. App'x 453, 455 (9th Cir. 2008) (reversing when ALJ failed to indicate weight given to opinions of state-agency medical consultants or incorporate their findings into RFC).  As Plaintiff notes, the ALJ did not address Dr. Yee's 2007 opinion that Plaintiff should lift no more than 10 pounds nor his 2009 opinion that Plaintiff should lift no more than 10 pounds and stand or walk only two hours in an eight-hour day, both of which

14

limited Plaintiff to sedentary work.[5]  Yet given that Plaintiff

reached "advanced age" while his applications were pending, had

an 11th-grade education, and lacked transferrable skills, a

limitation to sedentary work would have made him disabled under

the Medical-Vocational Guidelines.  See 20 C.F.R. pt. 404, subpt.

P, app. 2, R. 201.10.  Thus, the ALJ's failure to address Dr.

Yee's opinions cannot be said to be harmless, especially when the

ALJ's analysis of the remaining medical evidence failed to

highlight contrary findings and opinions.  See Stout v. Comm'r,

Soc. Sec. Admin., 454 F.3d 1050, 1055-56 (9th Cir. 2006) (error

only harmless when nonprejudicial to ultimate disability

conclusion); id. at 1056 (finding, when ALJ gave no reasons for

rejecting evidence, that decision left reviewing court "with

nothing to review to determine whether the error materially

impacted the ALJ's ultimate decision").[6]

---

[5]    The Commissioner notes that Dr. Yee's initial assessment
was "not strictly for sedentary work" because he opined that
Plaintiff could stand or walk six hours in an eight-hour day. (J.
Stip. at 10.) A claimant who cannot meet the exertion requirements
of light work, however, is generally limited to sedentary work.
See §§ 404.1567(b), 416.967(b) ("To be considered capable of
performing a full or wide range of light work, you must have the
ability to do substantially all of these activities."). Moreover,
Dr. Yee characterized his 2007 finding as a limitation to sedentary
work (AR 420) and, two years later, found that Plaintiff could walk
only two hours in an eight-hour day (AR 485).

[6]    The Commissioner cites Nyman v. Heckler, 779 F.2d 528,
531 (9th Cir. 1986), for the proposition that "the ALJ was not
required to expressly discuss his reasons for rejecting the
opinions of a non-treating physician." (J. Stip. at 9.) The Court
in Nyman said no such thing, but instead found that it was clear
from the record that "[n]o other doctor concurred" with the opinion
at issue.  Id.  Here, by contrast, it is not clear that Plaintiff's
other doctors would have disagreed with Dr. Yee's findings.

1    The Commissioner contends that the ALJ was entitled to rely
2    on Dr. Gerber and Dr. Moazzaz, both of whom opined that Plaintiff
3    was capable of light work with some additional limitations.  (J.
4    Stip. at 8-11; see AR 597, 826.)  Even so, as noted above, the
5    ALJ was required to specifically explain his reasons for relying
6    on the opinions of these doctors instead of those of Plaintiff's
7    treating doctors.  Moreover, there are reasons to question the
8    sufficiency of the opinions of Drs. Gerber and Moazzaz.
9        The Commissioner notes that Dr. Gerber reviewed the record,
10   which included opinions from Plaintiff's treating and examining
11   doctors and Dr. Yee, in formulating a recommended RFC.  (J. Stip.
12   at 10-11.)  Like the ALJ, however, Dr. Gerber provided no
13   explanation of his reasons for finding Plaintiff capable of light
14   work, and the ALJ sought no explanation.  An unsupported medical
15   opinion is of little value.  See Thomas v. Barnhart, 278 F.3d
16   947, 957 (9th Cir. 2002) ("ALJ need not accept the opinion of any
17   physician, including a treating physician, if that opinion is
18   brief, conclusory, and inadequately supported by clinical
19   findings"); accord Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th
20   Cir. 2001).  Having found medical-expert evidence necessary, the
21   ALJ was required to develop the record by eliciting from Dr.
22   Gerber a basis for his recommendation of a light-work RFC.  See
23   Ickes v. Astrue, No. EDCV 09-1890 CW, 2010 WL 3001706, at *4
24   (C.D. Cal. July 29, 2010) (finding ALJ failed to satisfy duty to
25   develop record when claimant "prejudiced by inadequate
26   examination of the medical expert"); see also
27   §§ 404.1527(e)(2)(iii), 416.927(e)(2)(iii) (medical experts'
28   opinions to be evaluated according to same factors as other

16

1   medical opinions).  He did not do so.

2       Moreover, a nonexamining physician's opinion only
3   constitutes substantial evidence if consistent with the record.
4   Morgan, 169 F.3d at 600.  The ALJ stated that Dr. Gerber's
5   opinion was consistent with the record and the "great weight of
6   the treating physicians' opinions" (AR 28), but the ALJ's failure
7   to explicitly interpret the objective evidence and weigh the
8   other medical opinions makes it difficult to judge whether that
9   finding was proper.[7]  See Stout, 454 F.3d at 1056.

10      There are also reasons to question the ALJ's reliance on
11  Dr. Moazzaz's opinion.  Shortly after he deemed Plaintiff capable
12  of light work, Plaintiff underwent a third surgery in hopes of
13  alleviating low-back and radicular pain that had not responded to
14  prescription medication or injections.  That Plaintiff was
15  willing and his longtime treating doctors advised him to undergo
16  spinal surgery highlights the need for explanation of the ALJ's
17  reliance on Dr. Moazzaz's opinion instead of those of doctors
18  better acquainted with Plaintiff's ailments.  See Smolen, 80 F.3d
19  at 1285 ("Because treating physicians are employed to cure and
20  thus have a greater opportunity to know and observe the patient
21  as an individual, their opinions are given greater weight than
22  the opinions of other physicians.").  It also suggests a need for
23  further development of the record, which could have been held
24  open to permit evidence of Plaintiff's response to the procedure

25

26

27      [7]    Because the Court finds that Dr. Gerber's testimony was
    inadequate, it need not address the parties' dispute as to the
28  completeness of his review of the record.  (See J. Stip. at 6-7,
    10-11.)

                                  17

1   and, if necessary, a postsurgical orthopedic examination on

2   behalf of the agency.  See Sepulveda v. Astrue, No. EDCV 09-2034

3   RNB, 2010 WL 2990111, at *1 (C.D. Cal. July 28, 2010) (finding

4   ALJ erred by not ordering consultative examination when records

5   included no assessment of claimant's postsurgery functional

6   limitations; medical evidence was thus insufficient and ALJ's

7   decision was "based on pure conjecture").  It was not held open,

8   perhaps because the ALJ mistakenly believed that Plaintiff's last

9   surgery was in 2009 (see AR 29), leading him to conclude,

10  erroneously, that the gap between that surgery and Plaintiff's

11  scheduled commencement of physical therapy shortly after the

12  hearing indicated that his impairments were not as serious as he

13  claimed (id.).

14      In sum, the ALJ erred in his consideration of the medical

15  opinion evidence, and remand is warranted.[8]

16      B.   Remand for Further Proceedings Is Appropriate

17      When, as here, the Court finds that the ALJ improperly

18  discredited medical opinion evidence, the Court generally has

19  discretion to remand for further proceedings.  See Harman v.

20  Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000).  When no useful

21  purpose would be served by further administrative proceedings,

22  however, or when the record has been fully developed, it is

23  appropriate under the "credit-as-true" rule to direct an

24  immediate award of benefits.  Id. at 1179 (noting that "the

25

26      [8]  Because the ALJ will likely reassess Plaintiff's
    credibility in light of the opinions of his treating and examining
27  doctors, including Dr. Yee, the Court need not decide that issue
    now.  Notably, however, Dr. Yee found Plaintiff not fully credible.
28  (AR 420.)

decision of whether to remand for further proceedings turns upon
the likely utility of such proceedings"); see also Garrison v.
Colvin, ___ F.3d ___, 2014 WL 3397218, at *20 (9th Cir. July 14,
2014) (noting that credit-as-true rule applies to medical opinion
evidence).

Under the credit-as-true framework, three circumstances must
be present before the Court may remand to the ALJ with
instructions to award benefits: "(1) the record has been fully
developed and further administrative proceedings would serve no
useful purpose; (2) the ALJ has failed to provide legally
sufficient reasons for rejecting evidence, whether claimant
testimony or medical opinion; and (3) if the improperly
discredited evidence were credited as true, the ALJ would be
required to find the claimant disabled on remand." Garrison,
2014 WL 3397218, at *20. When, however, the ALJ's findings are
so "insufficient" that the Court cannot determine whether the
rejected testimony should be credited as true, the Court has
"some flexibility" in applying the credit-as-true rule. Connett
v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003); see also
Garrison, 2014 WL 3397218, at *22 (noting that Connett
established that credit-as-true rule may not be dispositive in
all cases). This flexibility should be exercised "when the
record as a whole creates serious doubt as to whether the
claimant is, in fact, disabled within the meaning of the Social
Security Act." Garrison, 2014 WL 3397218, at *21.

Plaintiff had surgery shortly before the ALJ hearing and was
to begin physical therapy immediately after it. The record thus
does not reveal whether that surgery and Plaintiff's subsequent

19

treatment stemming from it resolved all or some of his medical issues.[9]  Accordingly, the first of the three requirements for a remand for benefits has not been met here.  Put another way, serious doubt exists here as to whether Plaintiff is disabled given the unknown results of his third surgery (and Dr. Yee's finding that he was not fully credible).  Therefore, remand is appropriate for the ALJ to consider Plaintiff's limitations in light of the opinions of his treating and examining physicians, the opinions of the state-agency consultants, and his May 2011 surgery.

**VI.  CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that (1) the decision of the Commissioner is REVERSED; (2) Plaintiff's request for remand is GRANTED; and (3) this action is REMANDED for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: September 8, 2014

JEAN ROSENBLUTH
U.S. Magistrate Judge

---

[9]  No additional evidence was submitted to the Appeals Council.  (See AR 6.)